**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 12-0175-WS-N** |
| | ) | |
| **PETER J. HOWARD,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on the Amended Motion of Branch Banking and Trust Company to Dismiss Defendants' Counterclaims (doc. 49). Despite requesting and receiving an extension of time to respond, defendants never filed any response to the Amended Motion to Dismiss, and the deadline for doing so has long since expired. Accordingly, the Motion is now ripe for disposition.

**I.      Relevant Background.**

Plaintiff, Branch Banking and Trust Company ("BB&T), brought this action against Peter J. Howard and Churchill, LLC. BB&T seeks recovery from defendants on a promissory note dated May 11, 2006 and given by Churchill in favor of Colonial Bank, as to which BB&T is successor in interest by asset acquisition from the FDIC as receiver for Colonial. The First Amended Complaint (doc. 24) alleges that the outstanding balance on the defaulted loan exceeds $2.6 million. According to the well-pleaded allegations of the First Amended Complaint, Howard's liability stems from his execution of a Continuing Guaranty Agreement in favor of Colonial on May 11, 2006, through which he unconditionally guaranteed repayment of the loan. On the strength of these and other allegations, BB&T asserts state-law claims against Churchill and Howard for breach of contract, money had and received, and account stated.[1]

---

[1]      Of some significance to the instant Rule 12(b)(6) Motion, the First Amended Complaint references a Forbearance Agreement executed by Churchill, Howard, and BB&T and
(Continued)

Faced with BB&T's claims, Churchill and Howard struck back by interposing a wave of counterclaims against BB&T in September 2012.  (*See* docs. 39, 40.)  The well-pleaded factual allegations of the counterclaims included the following salient points: (i) Colonial had given advice and had acted as an advisor to Churchill concerning its planned subdivision development, upon which advice Churchill relied; (ii) Colonial was enmeshed in a criminal conspiracy that rendered it financially unable to advance promised funds to Churchill; (iii) Colonial's failing in this regard prevented Churchill from completing Phase II of the subdivision and making payments due under the loan; (iv) a Colonial officer refused to meet with Howard and certain investors that Howard had lined up to infuse capital into the subdivision, ultimately leading the investors to decline involvement in the project; and (v) after becoming successor to Colonial, BB&T "continued the course of action Colonial had undertaken with respect to the Loan."  (Doc. 39, at 7-11; doc. 40, at 7-11.)  Based on these and other allegations, Churchill and Howard assert counterclaims against BB&T for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et al.* ("RICO"), misrepresentation and suppression, and breach of fiduciary obligations, with Churchill adding additional counterclaims for breach of contract and intentional interference with business relationships.

BB&T has now moved for dismissal of all counterclaims for failure to state a claim on which relief can be granted.

## II.   Analysis.

As noted, Churchill and Howard elected not to be heard in response to BB&T's Amended Motion to Dismiss.  Notwithstanding that omission, BB&T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims.[2]  Churchill's

---

dated January 5, 2010.  (Doc. 24, ¶ 11.)  A copy of that Forbearance Agreement is appended to the First Amended Complaint as Exhibit D, and is incorporated therein.  Insofar as the Forbearance Agreement modified the preexisting loan documents and established terms of the contractual relationship between BB&T, on the one hand, and Churchill and Howard, on the other, the terms of the Forbearance Agreement are of central importance to BB&T's claims against Churchill and Howard.  For their part, Churchill and Howard both admit that they executed the Forbearance Agreement and that the copy of that document attached to the First Amended Complaint is true and accurate.  (Doc. 39, ¶ 11; doc. 40, ¶ 11.)

[2]      *See, e.g., Continental Motors, Inc. v. Jewell Aircraft, Inc.*, --- F. Supp.2d ----, 2012 WL 3113136, *12 n.26 (S.D. Ala. July 31, 2012) ("as the movant in a Rule 12(b)(6) (Continued)

and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory.  *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss").  Rather, it remains BB&T's burden as movant to establish its entitlement to relief under Rule 12(b)(6).  In light of these circumstances, the Court scrutinizes BB&T's Motion to Dismiss in accordance with the following legal standard:  "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond.  If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise."  *Id.*[3]

The centerpiece of BB&T's Motion to Dismiss is a release that Churchill and Howard provided to BB&T as part of that certain Forbearance Agreement dated January 5, 2010.[4]  The

---

motion, JA bears the burden of explaining why Count III is legally deficient, with citations to authority as appropriate"); *Superior Energy Services, LLC v. Boconco, Inc.*, 2010 WL 1267173, *5 (S.D. Ala. Mar. 29, 2010) ("When attacking a complaint in a motion filed pursuant to Rule 12(b)(6), the moving party bears the burden to show that the complaint should be dismissed for failure to state a claim upon which relief may be granted."); *Gulf Offshore Logistics, LLC v. Bender*, 2010 WL 500448, *2 (S.D. Ala. Feb. 9, 2010) ("Because the defendant presented a Rule 12(b)(6) motion …, he at all times bore the burden of demonstrating entitlement to dismissal.").

[3]     Despite the undersigned's review of BB&T's papers to ascertain whether this initial Rule 12(b)(6) burden has been satisfied, Churchill's and Howard's failure to respond to the Motion was at their peril.  After all, courts generally cannot develop arguments or theories on behalf of a civil litigant that has remained silent.  *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC*, --- F. Supp.2d ----, 2012 WL 6569292, *6 (S.D. Ala. Dec. 14, 2012) (as a general matter, "the Court cannot 'fill in the blanks' to formulate a legal argument that a party has not").

[4]     The provisions of the Forbearance Agreement are properly considered for purposes of the instant Motion to Dismiss because that Agreement is attached to and incorporated by reference in the First Amended Complaint, and its authenticity and contents are unchallenged and uncontroverted.  *See, e.g., Quail Cruises Ship Management Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 n.5 (11th Cir. 2011) (explaining that analysis of Rule 12(b)(6) motion ordinarily turns on face of complaint "and documents attached thereto"); (Continued)

Forbearance Agreement was entered into by and between BB&T, on one side, and Churchill and Howard (among others), on the other.  By the express terms of that agreement, Churchill and Howard acknowledged that Churchill's promissory note had matured on July 30, 2009, with a principal balance of more than $2.3 million; that the loan documents (including promissory note and guarantees) were enforceable against them; and that the note was in default.  (Doc. 24, Exh. D, ¶¶ 2-3.)  In consideration for BB&T's agreement to forbear from pursuing remedies against them on that default, Churchill and Howard agreed to make certain payments, to liquidate certain collateral, and to take certain other actions for BB&T's benefit.  (*Id.*, ¶¶ 3-4.)  For purposes of this Motion to Dismiss, the critical provision of the Forbearance Agreement reads as follows:

> "To induce [BB&T, as successor in interest to Colonial Bank] to enter into this Agreement, [Churchill and Howard] … do hereby release [BB&T] … from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity (including without limitation, claims of fraud, duress, mistake, tortious interference, usury, or control), whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done by [BB&T] which has occurred in whole or in part, or was initiated at any time from the beginning of time up to and immediately preceding the moment of the execution of this Agreement."

(Doc. 24, Exh. D, ¶ 7.)

So the pleadings unambiguously reflect that Churchill and Howard executed a comprehensive release of claims in BB&T's favor in January 2010.  On its face, that release

---

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) ("the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto"); *see generally Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (even where document is not attached to complaint, it may be considered on Rule 12(b)(6) motion where "plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss").  Under any reasonable application of the rule, then, the Forbearance Agreement is properly considered in analyzing the pending Motion to Dismiss.

appears to be supported by consideration, and otherwise to be binding on and enforceable against Churchill and Howard.  Certainly, they have not argued or shown otherwise.  BB&T's argument in its Rule 12(b)(6) Motion is, quite simply, that the counterclaims fall within the broad, sweeping ambit of the release, such that they are not cognizable against BB&T at this time, as a matter of law.  This contention is persuasive.  As a general proposition, Alabama courts enforce such release provisions in accordance with their plain terms.  *See American Homes and Land Corp. v. C.A. Murren & Sons Co.*, 990 So.2d 871, 876 (Ala. 2008) ("absent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from what appears in the four corners of the document itself") (citation omitted); *Nix v. Henry C. Beck Co.*, 572 So.2d 1214, 1217 (Ala. 1990) ("If the express provisions of a release are unambiguous, then, in accordance with contract principles generally, they will be taken as expressing the intent of the parties."); Ala. Code § 12-21-109 ("All receipts, releases and discharges in writing … must have effect according to their terms and the intentions of the parties thereto.").

The release set forth in the Forbearance Agreement unambiguously provides that Churchill and Howard were releasing all claims they had against BB&T for any and all acts and omissions occurring prior to the date of execution of that Agreement (*i.e.*, January 5, 2010).  All information before the Court (including Churchill's and Howard's admission in the pleadings that they in fact executed the Forbearance Agreement) reflects that this release is enforceable according to its terms; therefore, that unambiguous release provision must be given full force and effect.  The legal effect of the release was that Churchill and Howard released all claims and causes of action they had or might have had against BB&T as of January 5, 2010.  That release is, by all appearances, broad enough to encompass all of Churchill's and Howard's counterclaims.  Nothing in the pleadings suggests that Churchill and Howard are bringing claims against BB&T for anything that happened or did not happen after January 5, 2010 (which subsequent events would, of course, be beyond the scope of the release).  Indeed, the counterclaims do not reveal a single act or omission postdating January 5, 2010 that Churchill and Howard contend give rise to liability for BB&T; to the contrary, the vast majority of the facts identified in the counterclaims relate to the time period during which Colonial was dealing with Churchill and Howard directly (*i.e.*, prior to Colonial going into FDIC receivership in August 2009).  For example, Churchill and Howard predicate their counterclaims against BB&T

on allegations that Colonial breached fiduciary duties in connection with the advice it gave to Churchill, that Colonial breached obligations to advance funds to Churchill, that Colonial engaged in unspecified "illegal conspiracies," that Colonial lied to Howard about its intentions to advance funding to Churchill so as to induce Howard to make loan payments, that Colonial interfered with Churchill's / Howard's business relationships with potential investors, and so on. Obviously, anything that Colonial did or did not do must have happened prior to January 5, 2010, because that entity was shut down and placed into FDIC receivership well before that date. As such, Churchill's and Howard's counterclaims against BB&T (as successor to Colonial) are barred by the plain terms of the January 2010 release insofar as they rest on anything that Colonial did or omitted to do.  The Rule 12(b)(6) Motion is properly granted as to those claims.

Thus, after applying the release set forth in the Forbearance Agreement, Churchill's and Howard's counterclaims can conceivably survive only insofar as they are rooted in allegations that BB&T (as opposed to Colonial) acted or failed to act in a manner that gave rise to liability, because only those acts and omissions could possibly postdate the January 2010 release.  Viewed through this prism, the critical question becomes what factual allegations the counterclaims level at BB&T.  Those allegations are few and far between.  Scrutiny of the counterclaims reveals that the only acts or omissions that Churchill and Howard attribute to BB&T itself (and, thus, the only acts or omissions that could possibly have happened subsequent to, and not be covered by, their January 2010 release) are that "BB&T continued the course of action Colonial had undertaken with respect to the loan," and that "[t]he actions of BB&T in connection with the Loan and its employment of former officers and other representatives of Colonial constituted a continuation of the illegal conspiracies initially started by Colonial."  (Docs. 39, 40.)

The fundamental defect with these factual allegations is that they are far too vague and conclusory to support an actionable cause of action under the Federal Rules of Civil Procedure. To withstand Rule 12(b)(6) scrutiny, counterclaim plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations

-6-

for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly/Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

Careful review of the counterclaims reveals that Churchill and Howard say almost nothing about what they contend BB&T did or failed to do. Rather, by all appearances, Churchill and Howard are suing BB&T not because of any act or omission by BB&T but because of Colonial's acts and omissions, all of which predate the Forbearance Agreement by a substantial margin and are therefore subject to the release executed by Churchill and Howard. What little mention the counterclaims do afford BB&T is insufficient to satisfy the minimum threshold for federal pleadings under Rule 8. For example, they allege that "BB&T continued the course of action Colonial had undertaken with respect to the loan," and that "[t]he actions of BB&T in connection with the Loan and its employment of former officers and other representatives of Colonial constituted a continuation of the illegal conspiracies initially started by Colonial;" however, their pleadings do not specify what exactly BB&T did or failed to do (other than the bare act of hiring Colonial personnel, which would not by itself violate RICO or support any counterclaim), when BB&T did or failed to do it, and what legal obligation BB&T bore to act differently than, or refrain from acting as, it did. These allegations are too conclusory, speculative, and devoid of meaningful factual content to support Churchill's and Howard's claims against BB&T.[5] So even assuming that any of Churchill's and Howard's

---

[5]     The closest that Churchill and Howard come to alleging facts supporting any claim of wrongdoing by BB&T is to allege that "BB&T failed and refused to make additional advances" to Churchill under the loan documents. (Doc. 39, at 8, 9; doc. 40, at 8, 9.) But this allegation is too vague to move the counterclaims from the realm of the conceivable to that of the (Continued)

claims against BB&T are beyond the temporal scope of the Forbearance Agreement release, such claims should be dismissed as inadequately pleaded under Rule 8 and *Twombly / Iqbal* principles.

Having determined that the counterclaims as pleaded suffer from *Twombly / Iqbal* deficiencies, the Court will not *sua sponte* afford Churchill and Howard an opportunity to replead their claims, when they have never requested such an opportunity.  *See, e.g., Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *see also U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 (11th Cir. 2010) ("Sanchez was represented by counsel but did not move for leave to amend, and we cannot conclude that the district court abused its discretion by failing to grant leave that was never requested.").  Besides, the relevant Rule 16(b) Scheduling Order fixed a deadline of August 31, 2012 for amending pleadings.  (*See* doc. 23, ¶ 5.)  No good cause exists for extending that deadline for some five months to enable Churchill and Howard to attempt to correct defects in their counterclaims against BB&T, particularly where they have never requested such relief, they previously released all of their claims against BB&T, and the object of their dissatisfaction is clearly identified as Colonial, such that their claims against BB&T are in large part derivative of Colonial's conduct predating the release.

**III.   Conclusion.**

For all of the foregoing reasons, the Court concludes that Churchill and Howard have not pleaded viable counterclaims against BB&T because (i) most of those counterclaims are barred

---

plausible.  When did BB&T refuse to make advances to Churchill?  (If it was prior to the Forbearance Agreement, then counterclaim plaintiffs have already released BB&T from liability for any such activity.)  What legal obligation did BB&T have to make such advances and what was the source of that obligation?  How could such non-advancement of funds by BB&T possibly support a viable claim for RICO violation?  What contractual provision obligated BB&T to continue advancing funds to Churchill after the Forbearance Agreement was executed? As pleaded, the counterclaims address none of these vital questions, leaving the claims firmly in the nature of the conceivable and the speculative, rather than the plausible and the colorable.  *See generally Speaker*, 623 F.3d at 1381 (under *Twombly*, "to state a claim, Speaker must do more than allege that the CDC did not fulfill its record-keeping obligation.  Speaker must allege the specific nature of the record-keeping obligation the CDC failed to satisfy.").

on their face by the release that Churchill and Howard signed in the January 2010 Forbearance Agreement; (ii) the remaining counterclaims against BB&T are supported by insufficient factual allegations to move them from the conceivable to the plausible, as required under *Twombly / Iqbal* principles; (iii) counterclaim plaintiffs failed to request leave to amend their pleadings; and (iv) the deadline for such amendment expired several months ago, in any event.  Accordingly, the Amended Motion to Dismiss (doc. 49) is **granted**, and all counterclaims interposed by Churchill and Howard herein are **dismissed with prejudice**.

DONE and ORDERED this 16th day of January, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE