**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 12-0175-WS-N** |
| | ) | |
| **PETER HOWARD, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 60).  Defendants, Peter J. Howard and Churchill, LLC, have not responded to the Motion, and the court-ordered deadline for doing so has long since expired.[1]  Accordingly, the Motion for Summary Judgment is now ripe for disposition.

**I.      Nature of the Case and Procedural History.**

This lawsuit was brought by a lender to recover on a defaulted loan through enforcement of a promissory note, guaranty agreement, and forbearance agreement.  In August 2009, plaintiff, Branch Banking and Trust Company ("BB&T"), acquired certain assets of nonparty Colonial Bank, N.A., after the latter went into receivership.  Among those assets were the obligations of defendants Churchill, LLC ("Churchill") and Peter J. Howard ("Howard") that are the subject of this litigation.  When Churchill and Howard breached repayment obligations, BB&T asserted

---

[1]      Curiously, defendants' counsel filed a Motion to Enlarge Time (doc. 68) on February 1, 2013, in which he requested a short extension of the deadline for filing an opposition brief, as an accommodation to his other professional obligations.  The Court granted the Motion to Enlarge, and authorized defendants' counsel to file a summary judgment brief on or before February 6, 2013.  (*See* doc. 69.)  Yet defendants never filed a brief.  This marks the second occasion in this litigation in which defense counsel requested and received an extension to file a brief on a dispositive motion, only to forego ever filing the brief.  Such a pattern of conduct is both unorthodox and inadvisable, as its only tangible effects are to mislead the Court concerning counsel's intentions and to delay resolution of pending motions for no good reason.

overlapping state-law claims against them for breach of contract (on the theory that defendants failed to pay BB&T amounts due and owing under applicable loan documents), money had and received (on the theory that defendants received money that in equity and good conscience belongs to BB&T), and account stated (on the theory that BB&T sent a demand letter to defendants in January 2011 stating the amount due under the loan documents and demanding payment in full, but defendants neither objected nor paid).[2]

For their part, Churchill and Howard unleashed an array of counterclaims against BB&T, including violation of the Racketeer Influenced and Corrupt Organizations Act, misrepresentation and suppression, breach of fiduciary obligations, breach of contract, and intentional interference with business relationships.  However, the Court dismissed all counterclaims via Order (doc. 67) dated January 16, 2013, reasoning that most (if not all) of them were barred on their face by a release that Churchill and Howard executed in BB&T's favor, and the remainder of the counterclaims were pleaded in a manner that was too vague and conclusory to comport with baseline *Twombly* / *Iqbal* pleading requirements.  The effect of the January 16 Order was to dismiss all counterclaims under Rule 12(b)(6), Fed.R.Civ.P., leaving only BB&T's claims for breach of contract, money had and received, and account stated as live, pending causes of action herein.  BB&T has now moved for summary judgment on those claims.

## II.     Factual Background.[3]

### A.     The Loan Documents.

In May 2006, in consideration for a loan, Churchill executed a Promissory Note in Colonial's favor in the principal amount of $4,057,500.  (Justiss Aff. (doc. 61, Exh. 1), ¶ 5.)

---

[2]     As noted, these claims sound exclusively under Alabama state law.  Although no federal question is joined herein, federal subject-matter jurisdiction was properly invoked by plaintiff pursuant to 28 U.S.C. § 1332, inasmuch as the well-pleaded allegations of the Complaint (and all facts before the undersigned) establish that there is complete diversity of citizenship and that the amount in controversy substantially exceeds the sum of $75,000, exclusive of costs and attorney's fees.

[3]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, defendants' evidence (had they presented any) would be taken as true and all justifiable inferences from the record are drawn in their favor.  That said, the material facts in this action appear uncontroverted and undisputed.

Colonial and Churchill entered into a series of amendments and extensions to the note and Churchill's payment obligations during 2008 and 2009.  (*Id.*)  Contemporaneously with the original Promissory Note, Colonial, Churchill, Howard and certain other individuals executed a document styled "Loan and Security Agreement," which (among other things) reflected that Colonial was loaning $4,057,500 to Churchill to develop Phase II of the Churchill Subdivision in Baldwin County, Alabama; that Churchill was executing a promissory note in Colonial's favor in that amount; and that Howard and others would execute a guaranty agreement to guarantee all of Churchill's payment obligations to Colonial.  (*Id.*, ¶ 6 & Exh. 1B.)

Pursuant to these agreements, Howard in fact executed a Continuing Guaranty Agreement in favor of Colonial in May 2006. (Justiss Aff., ¶ 7.)  By the terms of that agreement, Howard and others "absolutely and unconditionally, jointly and severally, and without any limitation (except as expressly provided for herein) guarantee[d] the indebtedness of [Churchill] to the Bank including but not limited to [Churchill]'s promissory note of even date herewith in the principal amount of **$4,057,500.00**."  (Doc. 24, Exh. B, ¶ 3.)  That Guaranty has never been revoked, terminated or cancelled.  (Justiss Aff., ¶ 7.)

    **B.**  ***BB&T's Acquisition of Loan and Subsequent Forbearance Agreement.***

For reasons not germane to this dispute, BB&T acquired various assets of Colonial on or about August 14, 2009.  (Justiss Aff., ¶ 4.)  Among those assets were the indebtedness of Churchill and the guaranty obligations of Howard.  (*Id.*)  By that time, the Promissory Note had matured and defendants were in default because they had failed to make payment in full of the indebtedness due and owing at maturity.  (*Id.*, ¶ 8.)

In lieu of initiating legal action to collect on the Promissory Note and Guaranty, BB&T negotiated and entered into a Forbearance Agreement with Churchill, Howard and others on January 5, 2010.  (*Id.*, ¶ 9.)  Recitals in that Forbearance Agreement confirmed all parties' understanding that the Promissory Note had matured and was in default, and that Howard had guaranteed payment of same, but that BB&T was willing to forbear from exercising its collection/enforcement remedies for a period of 12 months in consideration for certain promises and concessions.  (Doc. 24, Exh. D, at 1.)  In particular, Churchill and Howard acknowledged that the Promissory Note had matured on July 30, 2009; that the outstanding principal balance was $2,336,098.61; that the Promissory Note was in default by virtue of nonpayment at maturity; and that the Promissory Note and Guaranty were enforceable against Churchill and Howard,

neither of whom had any defense or rights of setoff or recoupment.  (*Id.*, ¶ 3.)  In exchange for BB&T's forbearance, Churchill and Howard agreed to make certain periodic payments, and further agreed that upon breach or termination of the Forbearance Agreement, BB&T would be entitled to accelerate the indebtedness and file suit to recover the balance of the debt, "plus previously accrued interest and default interest at … 12% per annum … from and after the date of breach or termination, along with court costs and attorney's fees."  (*Id.*, ¶ 6.)

> **C.**     ***Default / Termination of the Forbearance Agreement and Filing of Suit.***

Uncontroverted record evidence shows that Churchill failed to make agreed payments under the Forbearance Agreement during the 12-month forbearance period.  (Justiss Aff., ¶ 10.) In accordance with this default and the expiration of the forbearance period, on January 18, 2011, BB&T provided written notice to Churchill and Howard that all amounts owed under the Promissory Note and Guaranty were now due and payable, and demanded payment in full in the amount of $2,336,098.61 in principal, $150,085.08 in accrued interest, and fees of $9,378.97. (*Id.*, ¶ 11; Doc. 24, Exh. E.)  Defendants failed to pay those amounts, although they did sell the collateral supporting the Promissory Note with BB&T's approval in July 2012.  (Justiss Aff., ¶¶ 12, 13.)

Plaintiff's evidence is that, as of January 4, 2013, the balance owed under the Promissory Note, Guaranty and Forbearance Agreement consists of outstanding principal in the amount of $1,588,098.61, accrued and unpaid interest in the amount of $401,409.05, and late fees and other fees of $68,611.31.  (*Id.*, ¶ 14.)  In addition to these figures, BB&T seeks an award of contractual attorney's fees and costs (in an as-yet unspecified amount), plus interest continuing to accrue at the contractual rate of $330.85 per diem pursuant to the Promissory Note.  (*Id.*)[4]  Defendants contest none of BB&T's evidence concerning these claimed amounts.

The parties being unable or unwilling to resolve this matter short of litigation, BB&T filed suit against Churchill and Howard in federal court on March 8, 2012 to recover the principal, interest, late fees, attorney's fees, and costs that it contends are due and owing under the subject Promissory Note, Guaranty, and Forbearance Agreement.

---

[4]     If anything, BB&T's interest calculations appear favorable to defendants.  Rather than using the 12% default interest rate specified in the Forbearance Agreement, plaintiff asks that interest be computed at a substantially lower rate provided in the Note.

**III.    Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

As noted, defendants elected not to file a response in opposition to the Motion for Summary Judgment.  "Summary judgment is not automatically granted by virtue of a non-movant's silence."  *Williams v. Aircraft Workers Worldwide, Inc.*, 832 F. Supp.2d 1347, 1352 (S.D. Ala. 2011).  "Even in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials."); Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary judgment cannot be granted by default even when there is a complete failure to respond to the motion").  In that regard, the Federal Rules of Civil Procedure explain that a nonmovant's failure to respond to

a summary judgment motion authorizes the court to deem the movant's assertions of fact "undisputed for purposes of the motion" and to "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Rule 56(e)(2), Fed.R.Civ.P.

That said, a court is not obligated to read minds and ordinarily will not construct arguments or theories that a party has failed to raise.[5]  As such, the election of Churchill and Howard not to proffer argument, evidence or authority in response to BB&T's Rule 56 Motion is at their peril.  And defendants' failure to provide facts or law developing their apparent position that the note and guaranty are not enforceable will not be remedied by this Court unilaterally "filling in the blanks" on their behalf.[6]

**IV.   Analysis.**

The above-described record facts are sufficient to demonstrate Churchill's liability under the Promissory Note and Forbearance Agreement, for purposes of the breach of contract theory set forth in Count I of the Amended Complaint.  These facts are also sufficient to demonstrate Howard's liability on Count I under the Guaranty and Forbearance Agreement.  Accordingly, the Court will grant BB&T's Rule 56 Motion as to both of these causes of action.  As to the money

---

[5]     *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

[6]     *See, e.g., Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (recognizing that district courts are under no obligation to raise non-jurisdictional defenses *sua sponte*); *Vision Bank v. Merritt*, 2010 WL 5474161, *4 (S.D. Ala. Dec. 8, 2010) ("If Merritt wishes to pursue such a legal theory, it is incumbent on him to perform the necessary research and develop that argument, rather than stating it in the vaguest of outlines and expecting this Court to fill in the gaps."); *Minemyer v. B-Roc Representatives, Inc.*, 695 F. Supp.2d 797, 809 (N.D. Ill. 2009) ("[T]his is an adversarial system.  It is not a court's task to research legal arguments on a party's behalf."); *Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

had and received theory set forth in Count II of the Amended Complaint, however, this claim is not cognizable in this factual posture and is properly dismissed as a matter of law.[7]

> ### A.   Liability on Breach of Contract Claim.

To establish a breach-of-contract claim under Alabama law, "a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *National Sec. Fire & Cas. Co. v. DeWitt*, 85 So.3d 355, 371 (Ala. 2011) (citations omitted); *see also Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009).[8]   These elements apply with equal force in the context

---

[7]        BB&T did not move for summary judgment on the "account stated" claim set forth in Count III, and by all appearances has abandoned this claim. Abandonment is manifested by plaintiff's omission of any reference to Count III in its summary judgment filings, and its discussion of "all counts in the Amended Complaint" as including only Counts I and II. (*Compare* doc. 61, at 28 *with* doc. 70, at 2.)  Such a course of action is sensible and, indeed, probably required by the present circumstances.  Under Alabama law, "A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability."  *Mahoney v. Loma Alta Property Owners Ass'n, Inc.*, 4 So.3d 1130, 1134 (Ala.Civ.App. 2008) (citations omitted).  "An account rendered, and not objected to within a reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account."  *Id.* (citations omitted).  In this case, Count III is predicated on defendants' failure to object to the amounts stated in BB&T's demand letter of January 18, 2011.  (*See* doc. 24, ¶¶ 23-26.)  On summary judgment, however, BB&T seeks awards of principal, interest and fees that all differ drastically from those set forth in the January 18, 2011 letter.  As such, BB&T is no longer endeavoring to hold Churchill and Howard to the damages figures recited in the January 2011 statement of account.  In that case, an "account stated" theory no longer has any application to these proceedings because BB&T no longer maintains that defendants have admitted "that a definite sum is due," *Compass Bank v. Limon*, 2012 WL 400580 *2 (11th Cir. Feb. 9, 2012) (citation omitted), in the amount plaintiff now claims.  Even if BB&T were still pursuing Count III (which, again, does not appear to be the case), it would be an empty gesture because any relief granted BB&T on that claim would be redundant of the relief it is already receiving under Count I.  For all of these reasons, and particularly given plaintiff's apparent abandonment of the cause of action, BB&T's claim for account stated (as set forth in Count III of the Amended Complaint) is **dismissed**.

[8]        There is no doubt that Alabama law applies to the subject agreements.  After all, the Promissory Note specified that it "SHALL IN ALL RESPECTS BE GOVERNED BY, AND BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF ALABAMA, WITHOUT GIVING EFFECT TO THE CONFLICTS-OF-LAWS RULES AND PRINCIPLES THEREOF."  (Doc. 24, Exh. A, at 2.)  Likewise, the Guaranty included a provision that it "shall be governed by and construed under the laws of the State of (Continued)

of promissory notes and (with minor modifications) guaranty agreements.  *See, e.g., Bockman v. WCH, LLC*, 943 So.2d 789, 795 (Ala. 2006) ("A promissory note is a form of contract; therefore, it must be construed under general contract principles."); *Lifeline Pharmaceuticals, LLC v. Hemophilia Infusion Managers, LLC*, 2012 WL 1014812, *3 (Mar. 22, 2012) (elements of breach of continuing guaranty under Alabama law are "proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty," plus "an additional element, notice to the guarantor of the debtor's default") (citations omitted).

Undisputed evidence in the record confirms that all of these elements are satisfied with regard to the Promissory Note, the Guaranty, and the Forbearance Agreement.  These documents are, on their face, valid and binding agreements between the parties thereto; indeed, in the Forbearance Agreement, Churchill expressly assented to the validity and enforceability of the Promissory Note, and Howard expressly assented to the validity and enforceability of the Guaranty.  It is uncontested that BB&T (or the predecessor bank) performed its obligations under these agreements, by lending Churchill a seven-figure sum of money and (with respect to the Forbearance Agreement) forbearing from exercising contractual remedies for defendants' default for one year after the date of execution of the Forbearance Agreement.  Furthermore, the record plainly and unequivocally demonstrates that Churchill breached its payment obligations under the Promissory Note and the Forbearance Agreement, and that Howard breached his payment obligations under the Guaranty and Forbearance Agreement following Churchill's default.  Also, the record confirms that Howard received written notice of Churchill's default via, at a minimum, the January 2011 demand letter.[9]  Plaintiff has also made a substantial showing of damages, as discussed in § IV.C., *infra*.

---

Alabama despite any conflict of law principle that would apply the law of another state."  (Doc. 24, Exh. B, ¶ 11.)  On that basis, and in the absence of any suggestion by any party that some other state's laws govern, the Court applies Alabama law to BB&T's claims.

[9]     At any rate, the Guaranty terms provided that Howard waived any right to notice of default.  (*See* doc. 24, Exh. B, at ¶ 5 ("The Guarantor waives any right to any notice whatsoever, including … notice of the Debtor's default or failure of performance in any regard, notice of present, notice of demand ….  THE GUARANTOR EXPRESSLY AGREES THAT THE BANK OWES NO DUTY TO THE GUARANTOR.").)  Such waivers are valid and (Continued)

In light of BB&T's uncontroverted record evidence that all elements of its claims for breach of contract against Churchill and Howard are satisfied, the Motion for Summary Judgment is **granted** with respect to Count I.  There are no genuine issues of material fact, and BB&T is entitled to judgment in its favor as a matter of law on its claim that defendants breached the Promissory Note, the Guaranty and the Forbearance Agreement.

### B. *Liability on Money Had and Received Claim (Count II).*

Plaintiff also seeks summary judgment on its claim for money had and received, as set forth in Count II of the Amended Complaint.  As grounds for this request, BB&T argues that "there is no dispute that the loan was made, that Defendants agreed to repay the loan, and that these amounts remain unpaid," such that BB&T "is equitably entitled to recover from Defendants, jointly and severally, all amounts outstanding thereunder."  (Doc. 61, at 12.)

BB&T correctly observes that, at its core, "money had and received" is an equitable remedy.  Indeed, Alabama courts have characterized money had and received as a form of unjust enrichment.  *See, e.g., Jewett v. Boihem*, 23 So.3d 658, 661 (Ala. 2009) ("An action for money had and received is founded upon the equitable principle that no one ought [un]justly to enrich himself at the expense of another.") (citation and internal marks omitted); *Hancock-Hazlett General Const. Co. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986) ("Count I is in the nature of a common count for money had and received or money due and owing from payment by mistake, *i.e.*, unjust enrichment."); *Epps Aircraft, Inc. v. Exxon Corp.*, 859 F. Supp. 533, 535 (M.D. Ala. 1993) (Alabama cause of action for money had and received "derives from contract principles of implied contract and restitution … and also from the equitable principle that one may not be unjustly enriched at the expense of another").  As a matter of well-settled Alabama law, then, "[t]he essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good

---

enforceable under Alabama law.  *See, e.g., Sharer v. Bend Millwork Systems, Inc.*, 600 So.2d 223, 226 (Ala. 1992) ("The language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it.").  Thus, Howard is liable, irrespective of the efficacy of the January 2011 written notice.

conscience, belongs to plaintiff." *Dickinson v. Cosmos Broadcasting Co.*, 782 So.2d 260, 266 (Ala. 2000) (citations omitted).

The conceptual equivalence of unjust enrichment and money had and received creates an insuperable legal obstacle for BB&T on Count II. Alabama law is clear that quasi-contractual, equitable remedies such as unjust enrichment are not cognizable in the presence of an express contract between the parties that governs the same subject matter. *See, e.g., Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc.*, 62 So.3d 1020, 1028 (Ala. 2010) ("when an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails") (citations and internal marks omitted); *Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So.2d 443, 447 (Ala. 1996) ("This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter."); *Patans Ventures, Inc. v. Williams*, 959 So.2d 115, 117 n.1 (Ala.Civ.App. 2006) (citing learned treatise for proposition that "an action for unjust enrichment cannot lie in the face of an express contract"); *Joiner v. USAA Cas. Ins. Co.*, 2013 WL 84935, *1 n.1 (M.D. Ala. Jan. 8, 2013) ("the unjust enrichment claim is due to be dismissed for failure to state a claim, as there is no dispute that an insurance contract existed and a claim based on an implied contract will not lie where there is an express contract"); *Gould v. Transamerica Life Ins. Co.*, 2012 WL 512667, *3 (S.D. Ala. Feb. 15, 2012) ("it is not possible to have a viable unjust enrichment claim when there is an express contract as to the same subject matter"); *White v. Microsoft Corp.*, 454 F. Supp.2d 1118, 1132-33 (S.D. Ala. 2006) (exploring nature and status of unjust enrichment claims under Alabama law and explaining why they are incompatible with an express contract addressing the same subject matter).[10]

---

[10]     This stance is not unusual or unique to Alabama. *See, e.g., Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1126 n.20 (11th Cir. 2010) (noting that under Georgia law, action for money had and received "is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another," and that "[s]uch a claim exists only where there is no actual legal contract governing the issue"); *Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249, 1260 (11th Cir. 2006) ("Under California law, a quasi-contract claim for unjust enrichment cannot lie when there is a written contract that covers the same subject matter."); *Patchen v. Government Employers Ins. Co.*, 759 F. Supp.2d 241, 250 (E.D.N.Y. 2011) ("neither a claim for unjust enrichment nor a claim for moneys had and received – both of which are quasi-contract causes of action – will lie when a contract governs the relationship between a plaintiff and a defendant"); *Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp.2d 23, 29 (D. (Continued)

The Court has already found, based on uncontroverted summary judgment evidence, that express contracts prescribe Churchill's and Howard's payment obligations to BB&T.  The "money had and received" quasi-contractual claim set forth in Count II may have been appropriately pleaded at the inception of this action pursuant to notions of pleading in the alternative (in the event that valid, enforceable express contracts between the parties were determined not to exist).  Nonetheless, the foregoing authorities make clear that, as a matter of Alabama law, a plaintiff cannot recover both under a quasi-contract theory (*i.e.*, unjust enrichment, quantum meruit, money had and received) as a matter of equity and under an express contract theory covering the same subject matter.  The existence of express, enforceable contracts governing the parties' relationship negates BB&T's quasi-contractual claims for recovery of the same money, as a matter of law.  In recognition of this purely legal defect, summary judgment will be entered in favor of defendants and against plaintiff on Count II of the Amended Complaint.[11]

---

Mass. 2006) ("Because the Court concludes that a valid, express contract governed the relationship between Ruiz and defendants, plaintiff's claims for unjust enrichment and money had and received will be dismissed.").

[11]     As a general proposition, of course, notice and an opportunity to be heard should be given before entry of summary judgment for a nonmovant.  *See* Rule 56(f)(1), Fed.R.Civ.P. But the Eleventh Circuit has "distinguished between *sua sponte* grants of summary judgment in cases involving purely legal questions based on complete evidentiary records, and cases involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record."  *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201 (11th Cir. 2003); *see also Jones v. Fulton County, Ga.*, 2011 WL 5244788, *1 (11th Cir. Nov. 2, 2011) ("formal notice may not be necessary where a legal issue has been fully developed and the evidentiary record is complete").  This case falls squarely within the former category.  Whether plaintiff may recover under Alabama law on a theory of money had and received, when such plaintiff has already been awarded a full recovery on a breach of contract theory because of an express contract governing the same subject matter, is a purely legal question.  No further evidentiary development could influence the analysis one way or another. Nor is there ambiguity or uncertainty in the applicable law, such that the Court might benefit from another round of briefing.  Under the circumstances, no notice is necessary before entry of summary judgment in favor of Churchill and Howard on Count II.

### C.        Damages.

The summary judgment record clearly and unambiguously quantifies certain categories of damages to which BB&T is entitled under the subject agreements.  (*See* Justiss Aff., ¶ 14.)  The unpaid principal balance on the Promissory Note is **$1,588,098.61**.  Late fees and other fees for which the agreements provide total **$68,611.31**.  And the accrued and unpaid interest as of today's date is **$422,252.60**, with interest continuing to accrue at a rate of $330.85 per diem until judgment is entered.  All of these amounts (which presently total **$2,077,969.97**) are properly awarded to BB&T as contractual damages to which it is entitled from both defendants, jointly and severally, pursuant to Count I of the Amended Complaint.

### D.        Attorney's Fees and Costs.

In addition to the unpaid principal, interest, and late fees specified above, BB&T seeks an award of attorney's fees and costs.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract ...." *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995).  The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach."  *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984).

The Forbearance Agreement included specific provisions entitling BB&T to recover attorney's fees and costs in the event of breach or termination of same.  Most notably, paragraph 14 of that document provides as follows: "In the event Lender institutes legal proceedings in connection with, or for the enforcement of the Loan Documents, this Agreement, or any provision thereof, Lender shall be entitled to recover from the Debtor's [*sic*], its reasonable attorneys' fees and costs."  (Doc. 24, Exh. D, ¶ 14.)  Alabama law imposes a reasonableness constraint on all fee-shifting contracts, as a matter of public policy.[12]  Thus, pursuant to both the

---

[12]        *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation."); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010) (rejecting claim for attorney's fees in amount of 15% of fund to be collected, where plaintiff made no showing of actual attorney's fees incurred in enforcing contract).

plain language of the Forbearance Agreement and well-settled Alabama principles, BB&T is entitled to recover only its reasonable attorney's fees and costs incurred in this litigation.

At this time, however, the record does not establish the amount of reasonable attorney's fees and costs incurred by BB&T in this matter.  Moreover, the Court observes that in the vast majority of cases, counsel for both sides should be able to reach agreement in good faith on the amount of recoverable fees and costs, without burdening the litigants or the court with expensive, prolonged fee litigation.  *See generally Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("A request for attorney's fees should not result in a second major litigation.") (citation omitted).[13]  Accordingly, the parties are **ordered** to negotiate in good faith concerning the amount of attorney's fees and costs to be awarded to BB&T in this matter, and to file a joint status report reflecting the status and results of such negotiations on or before **March 15, 2013**.  If those negotiations are not successful, then BB&T is **ordered**, on or before **March 18, 2013**, to file such exhibits, affidavits and legal memoranda that it deems sufficient to establish both the amount and reasonableness of the attorney's fees and costs for which it seeks recovery.  Any response that Churchill and Howard may wish to file on the issue of quantifying recoverable fees and costs must be filed on or before **March 28, 2013**, at which time the Court will take the fee petition under submission.

V.   **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.   Plaintiff's Motion for Summary Judgment (doc. 60) is **granted in part**, and **denied in part**;

---

[13]   Both sides have an incentive to resolve this issue amicably and efficiently. Absent a resolution, BB&T will have to pay its lawyers to prepare a detailed, comprehensive fee petition and exhibits.  Although such fees will be chargeable to defendants, there is no guarantee that defendants are sufficiently solvent to reimburse BB&T for those fees upon entry of judgment.  Moreover, from BB&T's standpoint, the longer the attorney's fee issue drags on, the longer it will be until judgment is entered on the defaulted Promissory Note and Guaranty (in an amount which dwarfs any reasonable attorney's fee that might be awarded), and thus the longer it will be before BB&T can initiate enforcement efforts.  Meanwhile, from defendants' standpoint, prompt and amicable resolution of the attorney's fee issue will stop the meter running on plaintiff's attorney's time (for which defendants are legally responsible under the terms of the Forbearance Agreement) and allow for entry of judgment in a manner that cuts off the continued per-diem accrual of prejudgment interest on the underlying Promissory Note.

2.      The Motion is **granted**, and summary judgment is entered in plaintiff's favor and against defendants, as to Count I (breach of contract) of the Amended Complaint;

3.      In all other respects, the Motion is **denied**;

4.      Acting *sua sponte*, the Court **enters** summary judgment in favor of defendants and against plaintiff as to Count II (money had and received) of the Amended Complaint, because such a cause of action is not legally cognizable in these circumstances under Alabama law, such that Count II is **dismissed**;

5.       Count III (account stated) is deemed abandoned by plaintiff; moreover, it concerns a statement of account that has no relationship to the present amounts sought by BB&T at this time, and is therefore **dismissed**;

6.      BB&T is entitled to judgment against Churchill and Howard, jointly and severally, in the amount of **$2,078,962.52** (inclusive of unpaid principal, accrued interest through today's date, and late fees and other fees prescribed by contract), plus additional prejudgment interest accruing at the rate of **$330.85** per day, from March 9, 2013 through the date of entry of final judgment in this matter; and

7.      With regard to BB&T's claim for attorney's fees and costs, the parties are **ordered** to discuss the matter in good faith, and to file a joint status report reflecting the status and results of such negotiations on or before **March 15, 2013**. If those negotiations are not successful, then BB&T is **ordered**, on or before **March 18, 2013**, to file such exhibits, affidavits and legal memoranda that it deems sufficient to establish both the amount and reasonableness of the attorney's fees and costs for which it seeks recovery.  Any response that Churchill and Howard may wish to file on the issue of quantifying recoverable fees and costs is due on or before **March 28, 2013**.

DONE and ORDERED this 8th day of March, 2013.

s/WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE